UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MICHAEL ENDICO, individually and on behalf of
9 SOUTH FIRST AVENUE ASSOCIATES, LLC,

                Plaintiff,

        -against-                                  07 Civ. 2398 (LAK)

MARK FONTE, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

        Appearances:

                Harry J. Petchesky
                Victor P. Muskin
                William J. Davis
                SCHEICHET & DAVIS, P.C.
                *Attorneys for Plaintiffs*

                Williams S. Gyves
                Robert M. Travisano
                ENTWISTLE & CAPPUCCI LLP
                *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Michael Endico brings this action in his own right and derivatively on behalf of 9 South First Avenue Associates, LLC ("9 South") against Mark and William Fonte and two entities they control, ME Development Group, LLC, and Trifont Realty, LLC. The gist of the claim

2

is that the Fontes fraudulently induced Endico to transfer to them a two-thirds interest in 9 South, which Endico previously had owned entirely, without paying him for it and then looted and otherwise wasted its assets. The sole alleged basis of federal jurisdiction is a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act")[1] and Rule 10b-5 thereunder.[2] The matter is before the Court on plaintiff's motion for a preliminary injunction and defendants' motion to dismiss for lack of subject matter jurisdiction and failure to plead fraud with particularity under the Private Securities Litigation Reform Act[3] and Rule 9(b).[4]

*Background*

The complaint alleges that the Fontes presented Endico with an opportunity to participate in the purchase and rehabilitation of an apartment building in Manhattan. The idea was that Endico would put up a portion of the money, the Fontes would do the construction work and manage the project, and the parties each would own one-third of the entity holding the property. In a nutshell, Endico claims that he was defrauded. The Fontes tricked him into transferring two-thirds of 9 South without paying for it, caused 9 South to buy the property with Endico's money, mortgaged the property, and then looted the proceeds of the mortgage from 9 South. He claims that the membership interests that he sold were investment contracts and therefore securities under Section

---

[1] 15 U.S.C. § 78j(b).

[2] 17 C.F.R. § 240.10b-5.

[3] 15 U.S.C. § 78u-4(b).

[4] FED. R. CIV. P. 9(b).

3(a)(10) of the Exchange Act.[5]

> SEC v. W. J. Howey Co.[6] held that an "investment contract" is a contract, transaction or scheme "involv[ing] an investment of money in a common enterprise with profits to come solely from the efforts of others."[7] Endico therefore tries to establish that he was an entirely passive investor in order to show that any return to him was to come solely from the efforts of the Fontes. Closer inspection even of the portion of the complaint that Endico actually filed,[8] however, raises doubts on this score. It makes clear that Endico was a signatory for the 9 South checkbook, and indeed, plaintiff's counsel conceded at oral argument that Endico was the sole signatory. The complaint alleges further that the proceeds of the mortgage loan secured on the property were deposited in 9 South's account, and Endico wrote checks to disburse funds to the Fontes as they

---

[5]

15 U.S.C. § 78c(a)(10).

[6]

328 U.S. 293 (1946).

[7]

*Id.* at 301.

Both § 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1), and § 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10), define "security" to include an investment contract. For the sake of accuracy, the Court notes that *W. J. Howey* construed § 2(1) of the Securities Act of 1933, whereas Endico sues under the Exchange Act. The difference is immaterial, however. "While the definitions of securities in the 1933 and 1934 Acts are not identical, the definitions are treated as identical in 'decisions dealing with the scope of the term.'" *Pollack v. Laidlaw Holdings, Inc.*, 27 F.3d 808, 811 (2d Cir. 1994) (quoting *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 n.1 (1985)). Accordingly, courts long have applied *W. J. Howey* in Exchange Act cases. *See, e.g.*, *Mayer v. Oil Field Sys. Corp.*, 721 F.2d 59, 65 (2d Cir. 1983); *Nelson v. Stahl*, 173 F. Supp. 2d 153, 164 (S.D.N.Y. 2001).

[8]

The complaint refers to two exhibits, the agreement by which Endico sold part of his interest in 9 South and an operating agreement. Neither, however, was filed with the complaint. Docket item 1. Copies are attached as exhibits (although not properly labeled) to Mr. Endico's affidavit, which is part of docket item 11.

4

requested money.[9]

The Amended and Restated Operating Agreement of 9 South (the "Operating Agreement") raises even more questions as to Endico's claim of passivity. While it designated the Fontes as Managing Members with power and authority to manage the business, it went on to limit that authority by providing that no one member could act for or obligate the company and by requiring the unanimous consent of the members – and thus of Endico – to sell or mortgage company property.[10]

## Discussion

### I.    Preliminary Injunction Motion

In order to obtain a preliminary injunction, the movant must show (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.[11] Moreover, as plaintiff has the burden of pleading and providing the existence of subject matter jurisdiction, he must demonstrate an

---

[9]

Cpt [docket item 1] ¶¶ 28-30. *See also* Endico Aff. [part of docket item 11] ¶ 9.

The fact that the Fontes had Endico write checks for the business of course is inconsistent with the idea that Endico was an entirely passive investor.

[10]

Endico Aff. [part of docket item 11] Ex. 3, § 4.

[11]

*E.g.*, *Five Borough Bicycle Club v. City of New York*, __ F. Supp. 2d. __, No. 07 Civ. 2448 (LAK), 2007 WL 1127247, *5 (S.D.N.Y. Apr. 17, 2007); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 497 (S.D.N.Y. 2006) (quoting *Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)).

appropriate prospect of success on that issue in order to obtain a preliminary injunction.

It would be at least extremely doubtful that Endico will prevail on his claim that he was defrauded in connection with the sale of a "security" within the meaning of the Exchange Act, even if the complaint stated a legally sufficient claim, for the simple reason that there is no basis on this record to suppose that the membership interests that he sold were securities.

As an initial matter, Endico's argument rests on the premise that he was a passive investor in the purchase and rehabilitation of the property and that the membership interests he sold therefore were "securities" under *W. J. Howey.* But he does not accurately characterize the issue. The relevant focus is on what Endico sold, not what he was left with after the transaction. What he sold – and what therefore must be a "security" in order for the transaction to come within Section 10(b) – was the two-thirds interest in 9 South along with the Operating Agreement that made the Fontes the managing members of the entity. On Endico's account, the Fontes most assuredly were not passive investors whose expectations of profits were to be achieved or not solely as a result of the efforts of others. Hence, even if Endico was defrauded in connection with the sale transaction, it is at least exceptionally doubtful that the interests he sold were "securities" even if Endico thereafter was a passive investor in 9 South.

My doubts would remain even if I were to ignore this conceptual problem by focusing exclusively on Endico's position following the sale. While it may be that Endico was the babe in the real estate woods that he claims and that he was ill used by the Fontes, the fact remains that Endico retained important elements of control that, at least collectively, probably are inconsistent with the idea that he was a passive investor. Most significant, of course, is that he controlled the purse strings

by virtue of his signature power over the 9 South checking account.[12] When the property was mortgaged, the money went into that account. When the Fontes needed or wanted money, they asked Endico for it and Endico wrote the checks. Nor may his veto power over the sale or encumbrance of company assets be ignored.

In sum, on the basis of the record now before me, I see no material prospect that Endico will succeed in establishing that the interests he sold were securities and therefore no material prospect that he will prevail on the merits of his Section 10(b) claim.

The foregoing are my findings of fact and conclusions of law with respect to plaintiff's motion.

II.    *Motion to Dismiss*

In deciding a motion to dismiss, the Court ordinarily accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.[13] Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[14]

---

[12]    Plaintiff's counsel conceded at oral argument that Endico was the only person authorized to sign checks and kept physical possession of the checkbook.

[13]    *E.g.*, *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002).

[14]    *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

Plaintiff's allegations of fraud are subject to a higher standard under Rule 9(b). *See, e.g.*, *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 394-95 (S.D.N.Y. 2005). As the complaint fails to state a claim upon which relief may be granted

Taking the allegations in the complaint as true – and assuming that plaintiff adequately has alleged fraud – the complaint fails to allege that Endico sold defendants a security within the meaning of the Exchange Act. For the reasons indicated above, the interests Endico sold to the Fontes were not passive. In consequence, they were not investment contracts within the meaning of *W. J. Howey*.[15] And even if I were mistaken in focusing on the characteristics of the interests sold to the Fontes rather than those of the interest retained by Endico, Endico's contractual veto power over the sale or encumbrance of 9 South's assets coupled with his conceded position as the only authorized signatory with respect to the 9 South bank account would be irreconcilable with his contention that he was a passive investor in any relevant sense.[16] As there remains no other basis

---

even under the lower standard laid out in the text, the Court need not address whether the allegations of fraud are sufficiently particular under Rule 9(b).

[15] This of course is not to say that a membership interest in a limited liability company never could be a security within the meaning of the Exchange Act – only that the interests sold to the Fontes were not. As with so many things, context matters. *See generally*, *United Housing Found., Inc. v. Forman*, 421 U.S. 837 (1975) (shares in cooperative housing corporation not securities within meaning of Exchange Act).

[16] Whether Endico was passive in fact is quite a different matter from the question whether he was expected at the time of the transaction to remain passive, which is the controlling standard. *S.E.C. v. Aqua-Sonic Prods. Corp.*, 687 F.2d 577, 584 (2d Cir. 1982); *see S.E.C. v. Merch. Capital, LLC*, __ F.3d __, No. 06-10353, 2007 WL 983082, *11 (11th Cir. Apr. 4, 2007) (court is "limited to assessing the expectations of control at the inception of the investment" but post-investment actions may indicate what those expectations were) (citing *Williamson v. Tucker*, 645 F.2d 404, 424 n.14 (5th Cir. 1981)). As courts have held, "the mere choice . . . to remain passive is not sufficient to create a security interest." *Nelson*, 173 F. Supp. 2d at 165 (S.D.N.Y. 2001) (quoting *Rivanna Trawlers Unlimited v. Thompson Trawlers*, 840 F.2d 236, 240-41 (4th Cir. 1988)).

Furthermore, while contractual language reserving the right of an investor to exercise control may not alone be enough to conclude that there is no investment contract, *see Aqua-Sonic*, 687 F.2d at 584 (contractual language not sufficient to defeat securities fraud claim where promoters deliberately sought out inexperienced investors who were expected not to exercise rights granted by contract); *but see Williamson*, 645 F.2d at 421 ("So long as the investor has the right to control the asset he has purchased, he is not dependent on

for federal jurisdiction, plaintiff's state law claims must be dismissed.[17]

*Conclusion*

For the foregoing reasons, plaintiff's motion for a preliminary injunction [docket item 9] is denied and defendants' motion to dismiss [docket item 5] is granted.

As this ruling is based entirely on my view that plaintiff has not alleged and is most unlikely to establish the existence of a jurisdiction-conferring federal claim, it is without prejudice to any action or application that plaintiff may file in the state courts.

SO ORDERED.

Dated:        April 24, 2007

_____
Lewis A. Kaplan
United States District Judge

{The manuscript signature above is not an image of the signature on the original document in the Court file.}

---

the promoter or on a third party for those essential managerial efforts which affect the failure or success of the enterprise." (quotations omitted)), it nevertheless can be probative of the parties' reasonable expectations, *see Nelson*, 173 F. Supp. 2d at 166.  Here, the absence of allegations that, despite the language of the Operating Agreement, the parties expected Endico to remain passive with respect to any sale or encumbrance of company assets, combined with the fact that Endico in fact exercised financial control, however poorly, points to the conclusion that Endico was not a passive investor.

[17]    *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988) (district court ordinarily should dismiss state law claims under 28 U.S.C. § 1367(c)(3) when federal claims have been dismissed (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *accord Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).